UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TORAN PETERSON,<br><br>                Plaintiff,<br><br>v.<br><br>CORBY,<br><br>                Defendant. | Case No. 23-10090<br>Honorable Mark A. Goldsmith<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(ECF NO. 14)**

### I.  Introduction

Plaintiff Toran Peterson, a prisoner proceeding pro se, sues Michigan Department of Corrections (MDOC) officer Corby under 42 U.S.C. § 1983, alleging that he used excessive force. ECF No. 1. The Honorable Mark A. Goldsmith referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 8.

Peterson alleges that while he was housed at the Macomb Correctional Facility (MRF), he took part in two fights in which Correctional Officer Corby used excessive force against him. ECF No. 1, PageID.1. He alleges that in July 2022, Corby "tased me to stop me from fighting" but

continued to tase him "for what seemed like ten seconds" when he was on the ground. *Id.*, PageID.2 (cleaned up). Peterson then claims he was injured when Corby tased him again in August 2022. *Id.* Peterson says that he was defending himself without a weapon from another prisoner. *Id.*

Corby moves for partial summary judgment, arguing that Peterson failed to exhaust his administrative remedies for the August 2022 claim. ECF No. 14. The Court ordered Peterson to respond to the motion. ECF No. 15. When he did not respond, the Court ordered him to show cause in writing by June 6, 2023, "why the claims against Corby should not be dismissed for the reasons described in the motion for partial summary judgment or for failure to prosecute under E.D. Mich. LR 41.2." ECF No. 16. A month after the deadline, Peterson responded to the motion for partial summary judgment. ECF No. 20. And three weeks after that, he responded to the show cause, noting that his original show cause response was docketed erroneously in another case. ECF No. 25; *see Peterson v. David, et al.*, No. 23-cv-10089, ECF No. 21 (arguing that the prison counselor was taking documents out of his legal mail). For the reasons below, the Court **RECOMMENDS** that Corby's motion be **DENIED**.

2

## II. Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id*. at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

3

As noted, Corby claims that Peterson failed to exhaust available administrative remedies. The Prison Litigation Reform Act (PLRA) requires prisoners to properly exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must strictly comply with the administrative process provided by the prison. *Woodford*, 548 U.S. at 93-94. But if an administrative remedy "is not capable of use to obtain relief," it is not "available," and § 1997e will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 643 (2016).

Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). "But a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Parks v. Mich. Dep't of Corr.*, No. 2:20-cv-11673, 2021 WL 3533422, at *3 (E.D. Mich.

May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021) (cleaned up).  Summary judgment based on failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

**B.**

Corby argues that while Peterson exhausted his administrative remedies for his July 2022 excessive force claim, he did not exhaust his August 2022 claim.  ECF No. 14, PageID.139.  MDOC Policy Directive (PD) 03.02.130 (effective March 18, 2019) has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.  ECF No. 14-2.  The policy requires a prisoner to try to informally resolve the problem with the allegedly offending staff within two days of learning about the grievable issue, and then, within five days of those informal efforts, file with the grievance coordinator a Step I grievance about any unresolved issues.  *Id.*, PageID.155-156, ¶¶ Q, W.  The prisoner may then file a Step II grievance appeal within ten business days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due.  *Id.* at PageID.157, ¶ DD.  The same schedule applies to a Step III appeal—it is due within ten business days of receiving the Step II response or, if no

5

response was received, within ten business days after the date the response was due.  *Id.* at PageID.158, ¶ HH.  Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before suing.  If prisoners do not follow these "critical procedural rules," they do not exhaust administrative remedies.  *See Woodford*, 548 U.S. at 90.

Corby submits a certified grievance report showing that Peterson filed one relevant grievance that proceeded through all three steps of the process—Grievance MRF-22-07-1537-26a.  ECF No. 14-3, PageID.162.  The Step I grievance addressed Corby's alleged use of excessive force with a taser in the July 2022 fight.  *Id.*, PageID.181.  The Step I respondent reviewed the video footage of the incident and denied the grievance, reasoning that Corby used reasonably necessary force after Peterson disobeyed commands to stop fighting.  *Id.*, PageID.182.  The denial was upheld at Step II.  *Id.*, PageID.179.

Peterson then filed his Step III appeal and added a complaint that Corby again tased him in August for a fight that involved no weapon or serious beating.  *Id*.  Peterson urged that there should be a "rule that the pepper spray must be used as first choice when no weapon is involved and there is no serious beating.  I could've split my skull due to this

6

excessiveness." *Id.* The MDOC rejected Peterson's Step III appeal, stating, "[Y]our issue was in fact considered, investigated, and a proper decision was rendered." *Id.*, PageID.178.

Corby argues that Peterson never filed a Step I grievance about the August 2022 incident and thus did not exhaust that claim. ECF No. 14, PageID.146-147. Peterson responds that he should be excused from exhausting the August incident because Corby's action of tasing him twice was intimidating. ECF No. 20, PageID.208-209. It is true that "[a] prisoner need not exhaust remedies if they are not 'available,'" and that "interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross*, 578 U.S. at 636, 644. But Peterson's claim of intimidation should be rejected given that he managed to raise the August incident in his Step III appeal despite any alleged intimidation. The question, then, is whether Peterson exhausted his grievance about the August tasing by including it in the Step III appeal.

Corby contends that the MDOC policy required Peterson to raise the new issue from August in another Step I grievance. ECF No. 14, PageID.146, (citing MDOC PD 03.02.130 ¶S, ECF No. 14-2, PageID.155). Corby is right that a "[p]laintiff cannot raise a new issue in a grievance appeal and have it be deemed exhausted," but there is an exception when

7

"the MDOC proceeded to address that new claim on the merits." *Dykes v. Fuller*, No. 19-2243, 2020 WL 6257023, at *4 (6th Cir. July 10, 2020) (cleaned up). The exception is rooted in the general rule that, when a prison rejects a grievance on the merits, "overlook[ing] or forgiv[ing] its own procedural bar," a court should likewise decide the issue on the merits. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

In *Dykes*, the plaintiff's "conclusory allegation" in his Step III appeal that "he 'was unlawfully retaliated against'" failed to give the defendants' "fair notice of his retaliation claim" against two officials. 2020 WL 6257023 at *3. Those officials were not identified in the Step I grievance and the conduct he claimed was retaliatory was unrelated to the issues raised at Step I. Thus, even though the Step III appeal was rejected on the merits, the plaintiff did not exhaust his retaliation claim. *Id.* But in *McNees v. Torrey*, the plaintiff's new complaint of retaliation related to an alleged continuing pattern of retaliation by the same official complained of in the Step I grievance. No. 1:19-CV-121, 2020 WL 1990962, at *2 (W.D. Mich. Feb. 28, 2020), *adopted*, 2020 WL 1986486 (W.D. Mich. Apr. 27, 2020). The court found, "Torrey's alleged retaliatory act in Plaintiff's Step II grievance can thus be viewed as an extension of the issue he raised at

8

Step I." *Id*. And "the Step II grievance was considered on the merits and not rejected as procedurally barred for adding a new issue." *Id*.

This case aligns with *McNees*. Peterson described a second event in his Step III grievance appeal, but he raised the same complaint as at Step I—that Corby's use of a taser was excessive force. ECF No. 14-3, PageID.179, 181. And unlike in *Dykes*, Peterson's allegations of the August tasing were not conclusory; they gave fair notice of his complaint. *Id*., PageID.179. But rather than rejecting that new issue on procedural grounds, the MDOC decided the entire grievance on the merits. *Id*., PageID.178. When the MDOC overlooked or forgave Peterson's alleged procedural error and decided his claims of August excessive force on the merits, so should this Court. *Reed-Bey*, 603 F.3d at 325.

### III. Conclusion

The Court **RECOMMENDS** that defendant's motion for partial summary judgment (ECF No. 14) be **DENIED**.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: October 2, 2023

9

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 2, 2023.

              <u>s/Marlena Williams</u>
              MARLENA WILLIAMS
              Case Manager